Josephine Smalls Miller and I am, of course, representing myself in this matter. Martin Luther King Jr. once said that we begin to die the moment we keep silent about things that matter. I am before this court today as I was before the Connecticut Supreme Court approximately one month ago because I have chosen not to keep silent about something that matters. What is the current status? So there is a stay in place? There is no stay in place. The decision is pending still before the Connecticut Supreme Court. When you say the decision, what do you mean? There was an appeal from the presentment decision that went first to the Connecticut Appellate Court. However, sua sponte, the Supreme Court transferred that appeal directly to it and that matter was argued in January of this year. So we are awaiting a decision on the appeal from the trial court's order of discipline. And it's been argued, it's fully briefed, it's been argued, we're just, we, you are just waiting for the court to make its decision? That is correct. And so what's the relief you're seeking here in this appeal? The relief that I am seeking in this instance, Your Honor, is to lift the suspension that has been ordered by the Federal District Court after an order to show cause hearing. The judge suspended me retroactively for one year under the reciprocal discipline. That's back to May of last year. No, it goes back, the suspension occurred in May of 2019. However, it was issued retroactive to November 26 of 2018, which was the date of the state court suspension order. However, It's been more than a year since then, right? That's correct. However, I am still not reinstated and it makes a difference in this case because the Federal District Court judge said that I could not be readmitted to federal court practice until I was readmitted or otherwise to state court practice. That's what I, I'm just a little confused. So you said May 2018. It's been, as Judge Park, I thought it was May 2019, but. I misspoke if I said 2018. So 2019. 2019 that the suspension was issued by the federal court judge. So your suspension should end by May of this year, correct? Are you referring to the federal court suspension? Either one. That is not a given. Because although the period of suspension has expired on the state court side, there were a large number of conditions that were placed upon readmission. Readmission is not automatic. I see. The disciplinary authorities have now moved to try to dismiss my application for reinstatement. So the saga goes on. So there's a pending application. That's a fairly standard. Excuse me. Just one second. That's a fairly standard condition, though, is it not? Applying for readmission after suspension. I will say it certainly is in Vermont, because I used to represent attorneys who were applying for readmission. And that was always the process that went, that took place. So there are other hoops to jump through, regardless of what the Connecticut Supreme Court does, right? Well, I would disagree with that, Your Honor. As we have argued in the brief, in actual practice in Connecticut, it is a hit-or-miss process in terms of whether or not someone has to go through all of those hoops that you've mentioned. Or you mentioned. To be reinstated. There are numerous examples that I've cited where people, where individuals who were suspended for 12 months or more, but did not have to apply for reinstatement, because based upon the discretion of the particular judge, they can waive that. I recently filed something with the Superior Court that is now hearing the application for reinstatement based upon other individuals who, for example, went to federal prison, came back, and didn't have to go through all the hoops that I'm now being required to go through, despite 40 years of practice and no discipline prior to what we have here. So you, am I right, one of the arguments on the other side is that you, and also one of the points made by the district court, is that you have never actually contested the factual findings. That is not correct. Underlying factual findings, and what you've contested is that there's a racial, or what you've asserted is that there's a racial difference in the way you've been treated compared to other attorneys in Connecticut. I would disagree with that, Your Honor, respectfully. Only if one did not carefully read the transcript of the underlying presentment hearing, and that went on for three days, only then could someone say that I did not contest the facts. In actuality, there were four counts, and some of the matters that were presented did not occur. Let me just give you an example. In one instance, a referring judge who made a referral to the disciplinary authorities contended that I had not made my client available for a deposition in a specific case. Well, in actuality, the attorney in the case who did that was not me. It was the white attorney who was representing the plaintiff. How about the client fund account? It is correct that there was a $200,000 check that was placed in that account. The position that I have taken is that despite the fact that that money was placed into the account, the court could not simply just divorce that from the circumstances under which that occurred. And I also cited to the presentment judge that these were funds that had purportedly been given to me, but I placed it in the account in order to assure myself that there was not a problem with these funds. On the other hand, we have had attorneys… You intentionally put them into the account. Beg your pardon? You intentionally put those funds into the client's account. I did. However, I cited to the presentment judge a specific case of an attorney, Caucasian once again, and this is a case that went directly to the Connecticut Supreme Court where this attorney removed approximately $400,000 of funds from his IOTA account, disputed funds, and placed them into his own account. Ordinarily, that would call for disbarment for a 12-year period of time. However, when the matter went to the Connecticut Supreme Court, what they found was he did not intend, they said, to appropriate these funds for himself. Maybe we'll hear more from Mr. Frost, the poet, Robert Frost. But for now, I'm just interested in this Connecticut Supreme Court. Are your allegations of racial disparities before the Supreme Court? I have made that allegation before the Supreme Court. I'm not sure that they are going to… No, I understand, but they're in front of the Supreme Court. That's correct. Thank you, Ms. Miller. You have reserved two minutes for rebuttal. Yes, Your Honor. Mr. Frost. Thank you. May it please the Court, my name is Robert Frost from the law firm of Frost Bussert in New Haven. In this matter, representing the Federal Grievance Committee for the District of Connecticut. It was not a clear abuse of discretion for Judge Underhill to enter a reciprocal order of discipline in this particular matter, suspending Ms. Miller for one year, retroactive to the commencement, which would have been November of 2018. Okay. Retroactive to that date, which means that effectively her Federal suspension expired in November of 2019 because the order was made retroactive to the commencement of the State's suspension. And in addition, I think the record reflects that Ms. Miller did seek a stay in the Federal District Court and Judge Underhill conditionally granted it with the caveat that if there was a stay at any point in the State proceedings, there would be a stay of his order in the Federal proceedings. But my understanding is no stay was ever entered in the State court proceedings, so she, Ms. Miller, was effectively under suspension for the full period of time in the District Court's order. So just we wrestled with this at the committee. Typically, a grievance proceeding is between the court and the attorney. But under our local rule in Connecticut, which is common in other districts, there is a procedure where the Federal Grievance Committee does step in and take somewhat of an advocacy role by bringing a presentment, which we did in this case under the local rule, based on its being made aware of a discipline in another jurisdiction. And in this case, it was Connecticut. So there was a procedure which was followed, as it is in every case, where another disciplinary matter or disciplinary sanction comes to the attention of the District Court. And so I filed the presentment. On the order of the committee, or that's one and the same? Correct. It's one and the same because under our rules, the Federal Grievance Committee is charged with the responsibility of taking a step of filing a presentment, which is how this matter got to the District Court. In the District Court, correct. And so I filed that presentment based on the State court discipline issued by Judge Schaben in the State court. And that matter went to an order to show cause hearing before Judge Underhill. Ms. Miller filed a motion to dismiss and was given an opportunity to add any additional material to the record before that hearing. We did not oppose her efforts to do that. In fact, there was an effort, I think, to add some supplemental material, which we did not oppose. We did have the hearing, and Judge Underhill, in his written ruling, as the court knows, basically followed the four, the selling factors that are from the United States Supreme Court case, the selling case, which had been sort of incorporated into our local rule. And I understand that it's followed and implemented in other districts. And that's namely that whether the we don't relitigate all the facts in a reciprocal discipline proceeding in Federal court when it's based on a State court discipline as it was here. If there is a credible allegation of racial disparities. In other words, if the Federal Grievance Committee or the Federal court determines based on the record that although there was some form of underlying misconduct, some attorneys who engage in that misconduct are disciplined by the State court system and others are not based on, you know, whatever protected characteristic. So this issue did obviously come up before the court. The way it was presented to Judge Underhill was, I guess Ms. Miller filed a motion to dismiss. But essentially it was, I think, in his ruling he treated it as an affirmative defense and indicated that there's no authority to bring that sort of affirmative defense in a disciplinary proceeding. I did cite the Thompson case where it may be that it's not a defense. When an attorney engages in misconduct, clients are hurt. It may not be a defense to the discipline. But if there is a pattern or some indication of disparate treatment, either the district court in the first instance could take that into account, I suppose. But the ---- of mitigation or by in determining whether it's appropriate to impose reciprocal discipline? I suppose both. But I think primarily the latter, whether to impose substantially different discipline, which could be no discipline. Yeah. And the court ---- I'm sorry. Go ahead. The district court has the authority to do that, right? Under ---- Because it's a reciprocal process, it doesn't mean it's imposition of a sanction in the federal district court has to exactly mirror what has happened in the state. Correct. Our rule is written as it shall impose reciprocal discipline unless. So ---- and I think in this Court's decision in In re Roma, it is indicated that that's basically a rebuttable presumption, which in this case, to the Court's question, if there were detailed factual allegations or strong evidence of potential discriminatory animus or conduct by disciplinary authorities, I suppose the Court on the reciprocal matter could take that into account and decide that substantially similar discipline is not required based on. I mean, here your argument is that the allegations of disparate treatment are conclusory and really there's not enough facts to support that. That was the Court's conclusion. But if they were not conclusory and there was some basis to believe that disparate treatment had occurred based on race or whatever other protected category, then what you're telling us is that the Connecticut district court, under its rule, is it 83.2? Yes. Would have complete to impose no discipline. My interpretation of the rule and the standard is the Court, I'm a little at odds because the Court in its ruling, I think, talked about affirmative defense and whether it would be available at all. Maybe we're talking about what's the manner in which the argument is raised, whether it's ‑‑ but I ‑‑ You're suggesting that the better reading of 83.2 is that it permits the grievance committee, really the Court, to impose no discipline as a matter of discretion. It has that discretion under the rule. Substantially different discipline could include no discipline. That would be my reading of that language. And whether there would be other opportunities for a aggrieved respondent like Ms. Miller to bring injunctive relief or some other sort of relief in another form, that may be another remedy as well. But in terms of how to resolve the reciprocal discipline matter, I think the Court had the authority to take it into account. In this case, as the Court noted as an alternate basis for its ruling, it did not agree that Ms. Miller had laid out detailed, strong evidence of either selective enforcement, discriminatory enforcement, however you want to characterize it. It was not apparent on the face of this record. And that was our position. My position in my brief was that it can be difficult when there's a lot of material and very broad statements made to understand what are the facts that specifically support the conclusion that Ms. Miller wants this Court to draw. And I understand that in one or two instances she may have some response, but this was obviously discipline predicated on multiple matters. The concerns of those courts were about patterns of behavior, as well as the most serious allegation, as indicated by Judge Chabin, was practicing in an unauthorized fashion before the Connecticut Appellate Court. And that was the subject of one of the counts in the State Court. What is in front of the Connecticut Supreme Court? So the underlying grievance in the State Court that eventually ends up in the Connecticut Supreme Court that Ms. Miller referenced started off as a three-count, I think a four-count, but it ended up a three-count presentment. And one of those counts related to her unauthorized practice of law before the Connecticut Appellate Court in violation of a prior Connecticut Appellate Court order that she not be allowed to participate or to represent clients before that court. So that became a count of an additional act of misconduct. I don't think Ms. Miller has contested that or accepted responsibility for that. And what is in front of the Connecticut Supreme Court that's pending determination? I actually would defer to Ms. Miller on that. I'm not – I don't think I'm as well-versed to speak to exactly what's there. But my understanding, even based on Ms. Miller's comments this morning, is it's the appeal of Judge Chabon's discipline ruling, which you have in the record before you. Okay. And if there's nothing further from the Court, I would rest on our arguments in our brief. So all we're really talking about is reinstatement? Well, I can address that, Your Honor. So – and I appear and have experience with the state court system in Connecticut. There were conditions placed on her in the state court discipline that she has to reapply, and there's a process and an investigation by the superior court before someone can be readmitted. And she also had a condition of a monitor. So that's another condition that's added to her discipline that she would have to – A member of the bar who's engaged to keep an eye on. Correct. Correct. And then when you get to where I come in at the district court level in federal court, you cannot be reinstated unless you're in good standing in another jurisdiction. And I know that Ms. Miller is – I believe may be represented in other jurisdictions besides Connecticut, but I know in Connecticut right now she is not in good standing. So she would not be able to be readmitted in the District Court of Connecticut until she fulfills that requirement. So that's why it's still in some ways linked to what's happening in Connecticut state court. Okay. Does that answer the court's question? I think so. I think so. Okay. Thank you. Thank you, Mr. Vrosk. Ms. Miller. Okay. Could you just help me understand what precisely is in front of the Connecticut Supreme Court? It's the appeal of the underlying – Okay. – and the conditions that were placed by the presentment judge upon any possible reinstatement practice. So some of those, if the Connecticut Supreme Court agreed with you, it could give you a partial relief, if you will. You could be reinstated, no conditions, that sort of thing. That could happen. However, let me just say first that I have no quarrel with the right of the courts and, in fact, the duty of the courts to properly discipline attorneys when appropriate. However, that application of discipline must be fair and just. That's a principle that has been with us at least since the 1960s when the U.S. Supreme Court decided NAACP versus Button, wherein they said you can't use discipline as a disguise or a guise to discipline an attorney that you don't like or because of racial reasons or because of the kind of practice that they have. And that is what I have been arguing before this Court. I want to specifically point out some of the specific facts that I did bring before the presentment judge that everyone continues to say there was no evidence to support. In the presentment hearing, there was evidence from a Caucasian female attorney who simply wrote a letter of complaint about me to the disciplinary authorities. That then sparked an entire investigation and ended up in a count of the presentment. On the other hand, I submitted a letter to the disciplinary authority as well as the statewide grievance committee, and we have both entities in Connecticut, and I named approximately eight Caucasian attorneys who had engaged in misconduct, and I knew all of these except one, named cases, dates, times, manner of misconduct, most of which had occurred in the presence of judges, and I asked that the disciplinary authorities investigate. They refused, saying that I had to file a specific complaint individually for each one of these attorneys. Well, the attorney who filed the letter about me admitted at trial that she didn't even have to go through that process. So even that evidence itself shows that there is disparity in the way that attorneys are investigated. I bring to the Court's attention, I know I've just got a few seconds, that the state of California in November 2019 came out with a report that was based on approximately 30 years of study, and they concluded that African American attorneys in California were subject to discipline, harsher discipline than their Caucasian peers in at least three or more times their colleagues. That was statistically significant. They, however, decided, let's do the right thing, let's look at this. On the other hand, Connecticut has been completely resistant to any of the matters that I have brought forward with regard to the disparity of discipline of African American attorneys, and have in one forum, when I initially filed a matter in federal court saying that there was disparity in discipline, the state argued, through the attorney general's office, argued that I shouldn't be in federal court and that the younger abstention doctrine should be applied. They said I've got a perfect forum for that in state court. I ended up in state court, and then we had a judge who, notwithstanding what the attorney general had said, stated at the outcome his belief that bringing up issues of disparity, racial disparity, discrimination in discipline of attorneys, he did not think was appropriate in a presentment proceeding. So on the one hand, in one forum they say go back to state court. When you go to state court, they don't want to hear it. The decision of Judge Chabin made it very clear that while he gave lip service to saying that he was according to due process and listening to the substantive constitutional arguments that I was making, it was clear that he believed that they should not appropriately be heard in state court. So you're understanding that you can't pursue these claims of racial discrimination through the state court system as a separate litigation? That is correct. I have, there's a lot of litigation about this, I currently have pending before the Connecticut Claims Commissioner a complaint which covers all of these issues and shows the past practice. However, you can't bring such a suit against the State, especially since we're talking the judicial branch, unless you get permission of the Claims Commissioner. I'm not really ---- And that's pending. That's pending. But the position that I have continued to take is that there is an issue of disparity of discipline, of attorneys, and that matter has not been effectively heard by either the State or Federal courts. I think that Judge Underhill simply rubber-stamped what was done by the State of Connecticut and have effectively caused me to be out of practice both in State and Federal court. And one other matter I might bring to the Court's attention, this is not simply a matter of me just being reinstated. At present, Connecticut also applies to the State of Michigan. Could you stand closer to the mic? Sorry. Thank you. Okay. Applies to the State of Michigan where I have been admitted to practice for 40 years, although I never practiced there, and where that membership has been lapsed for more than 10 years, they sought reciprocal discipline there. Despite my arguments that that should not take place, the State of Michigan has now suspended me on reciprocal discipline for a year, effective February of this year, which means there's another year of suspension by a jurisdiction that under Connecticut's rules, they could then hold that suspension against me and deny reinstatement on that basis, in effect stacking the discipline for something that's already been time-served. It's not just — I believe that it's unfair, and I would ask that the Court grant my petition. Thank you. Thank you. Thank you, Ms. Miller. Thank you, Mr. Frost. We'll reserve decision in this case.